United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARRELL VINCENT WHITE,

Petitioner,

v.

ROBERT AYERS, JR., warden,

Respondent.

_______________________________/

No. C 06-6365 SI (pr)

**ORDER OF DISMISSAL**

**INTRODUCTION**

Darrell Vincent White, currently in custody in San Quentin State Prison, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court for consideration of respondent's motion to dismiss, petitioner's motion for summary judgment, and petitioner's two motions for sanctions. Now that the record has been developed more fully, it is evident that petitioner's claim is plainly meritless and comes to this court too late for relief. The action will be dismissed for both reasons.

**BACKGROUND**

White was convicted in the Madera County Superior Court of rape and kidnapping with the intent to commit rape. Various sentence enhancement allegations were found true. He was sentenced on June 4, 1993 to 43 years in prison.

On appeal, the California Court of Appeal determined that White was properly sentenced under California Penal Code § 667.6 to fully consecutive terms for the kidnapping and rape charges. Petitioner's Motion For Sanctions, Exh. B. The state court of appeal specifically

determined that the sentences could be fully consecutive and that they were imposed under California Penal Code § 667.6 rather than § 1170.1. Petitioner's Motion For Sanctions, Exh. B.[1] For purposes of the current action, that determination is accepted as correct and unchallenged.[2] The state court of appeal's determination is fatal to White's habeas claim.

White's federal habeas petition did not challenge his conviction or the sentence imposed but instead stated that it "challenges only the execution of his sentence." Petition, p. 2. He alleged that he was "deprived of liberty in violation of the Fourteenth Amendment because prison officials refused to refer his case for correction after they detected error in his sentence." Id. at 8. The court found a cognizable due process claim and ordered respondent to show cause why the writ should not be granted.

Respondent has moved to dismiss the petition as time-barred. White has opposed that motion and also has filed a motion for summary judgment as well as two motions for sanctions.

---

[1]The California Court of Appeal's March 15, 1996 decision discussed White's claim that the sentences on kidnapping and rape violated California Penal Code § 654. The court stated: "The sentence on appellant's kidnapping conviction was selected as the principal term. The rape conviction was run fully consecutive to the term imposed on the kidnap conviction. The court therefore sentenced appellant on the rape pursuant to section 667.6, subdivision (c), not section 1170.1." Petitioner's Motion For Sanctions, Exh. B. This sentencing decision is critical because White's current claim is based on an alleged entitlement to be sentenced under § 1170.1

California Penal Code § 1170.1 provided generally for a principal term and a subordinate term, with the subordinate term being "one-third of the middle term," while § 667.6(c) provided a harsher sentencing scheme: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion." Cal. Penal Code § 667.6(c).

[2]This action was allowed to go forward in this district because White specifically alleged he was challenging only the execution of a sentence. Had the petition challenged the sentence imposed, it would have been transferred to the Eastern District, because that was the district in which the conviction and sentence occurred. Had the petition challenged the sentence imposed, it also would have run afoul of the rule against second and successive petitions because the Eastern District already had denied his habeas petition challenging the conviction. See White v. Galaza, E.D. Cal. No. CV-96-06171-OWW, affirmed, White v. Galaza, 9th Cir. No. 98-17392. White would have had to obtain permission from the Ninth Circuit Court of Appeal before he could file a second or successive petition. See 28 U.S.C. § 2244(b).

## DISCUSSION

A. The Petition Is Legally Meritless

1. Facts

When a prisoner arrives in the CDC system, as well as upon the happening of certain events during his incarceration, a CDC case records specialist reviews his abstract of judgment as well as other sentencing documents and enters the information into the CDC computer system. A computer print-out called the Legal Status Summary is generated. If a mistake is discovered or it appears that the abstract of judgment has a sentence not allowed under the Penal Code or that contradicts the sentencing transcript, the CDC cannot change the abstract of judgment but can suggest to the court that a correction be made. In re. Sandel, 64 Cal. 2d 412, 415-16 (Cal. 1966). If the error is discovered, the records specialist can refer the matter to the CDC's legal processing unit ("LPU"), the LPU reviews it, and sends a letter to the sentencing court to resolve the discrepancy. See CDC Department Operations Manual ("DOM") §§ 71020.7 et seq.

The Legal Status Summary form for White had a computer-generated message on it that his sentence was "discrepant." "Discrepant cases are those cases in which errors in sentencing are detected from the data entered into the OBIS or detected by case records staff." CDC DOM § 71020.7.3. White asserted in his habeas petition that he learned that his sentence had a problem when he reviewed the documents in his central file on February 24, 2004 and saw that his Legal Status Summary had "discrepant" printed on it as well as a handwritten notation regarding that discrepancy. Petition, p. 8. He further alleged that a new Legal Status Summary was prepared on April 23, 2004 and "reflected that petitioner's case remained flagged as being a discrepant one, i.e., contained errors in sentencing." Petition, p. 8(a). From the new legal status summary dated April 23, 2004, White allegedly "was able to learn that his total term of 43 years was required to be approximately 14 years less." Id.[3]

[3]That discrepancy message was not new in 2004. The "discrepant" error notation had appeared on a Legal Status Summary prepared on January 8, 1997, as well as one prepared on July 23, 2003. See Motion To Dismiss, Exh. B to Exh. 4; Petitioner's Exhibits, Exh. E. White had been complaining about the "discrepant" message since at least 2001.

The discrepancy message on White's Legal Status Summary stems from the consecutive sentencing rule in California Penal Code § 1170.1. The implication of White's allegations is that, if § 1170.1 applied to his case, he would be entitled to a sentence approximately 14 years shorter than the 43 years currently shown as his total term.

White's federal habeas claim is that the CDC personnel won't refer his case to the CDC's LPU (and presumably the trial court) to fix the discrepancy. He attempts to capitalize on a CDC operations rule to circumvent the state appellate court's determination that he was not sentenced under § 1170.1. White first contended in an inmate appeal in 2004 that the state appellate court's opinion had to be removed from his file under a CDC operations rule. Once the CDC officials agreed to remove the opinion from his central file, he claimed that his sentence had to be calculated under § 1170.1 – his thought apparently being that the removal from his file of the court's opinion would also remove the decision embodied in that document. He is wrong.

White filed an inmate appeal on April 19, 2004, in which he initially complained that the CDC had not destroyed the appellate opinion in his case, which (according to him) should have been destroyed under department policy several years earlier. He initially requested that the opinion be removed and destroyed. Motion For Expansion of Record, Exh. A, § A. The April 23, 2004 response at the informal level stated: "Granted, Opinion destroyed. However, the appellate court returned a copy of the decision to affirm your sentence remains valid. The removal of the central file copy does not invalidate the decision and issues regarding your sentence will not be re-addressed." Id., § C. In the formal level appeal dated April 27, 2004, White wrote that he was dissatisfied with the response at the informal level.

> P. v. White, 5 Crim. #F019953 was finalized on June 18, 1996. The opinion was to be destroyed in 1996. Instead it was retained for 5 years and used as a basis to deny my req. for an LPU referral in 2001. PC § 1263 says: "If a judgment against the defendant is affirmed, the original judgment must be enforced." Instead of complying w/ PC § 1263 CDC staff, "per Judy Debelle" changed the principal count "to accept fully CS & greater term." (Attachment-III hereto). Compliance w/ PC § 1263 will reveal that Count 2 was the CS offense on which only 1/3 of the mid-term was to be imposed under § 1170.1(a). This case was required to be referred to the LPU years ago and must now be reviewed, based on the grant of this appeal.

Motion For Expansion Of Record, Exh. A, § D (emphasis added). This inmate appeal was

rejected as duplicative of a 2001 inmate appeal.

White also filed a "citizen's complaint" on June 3, 2004, in which he asserted that "prison records staff changed a consecutive sentence designation made by a judge, withheld the case file from the CDC mandatory audit schedules to conceal the unauthorized re-designation and failed to refer a case identified as 'discrepant.'" Petitioner's Reply To Motion To Dismiss, Exh. B, p. 1. The warden's July 29, 2005 response stated the discrepancy and warning errors on White's legal status summary were reviewed during an intake audit on February 26, 2001 and determined to be a computer program problem rather than a problem that needed referral to the LPU for correcting by the sentencing court. The response further stated, "This decision is supported by both Appellate Court Opinions F019953 and F039047." Id. The warden also wrote that White's case did not require further audit because it had been audited upon intake at San Quentin in 2001 and none of the other listed reasons for an audit had occurred since then. Id. at 1-2. The warden noted that White's arguments regarding his sentence had been rejected by the state superior court and the state court of appeal.

2. The Due Process Theory On Which White Proceeds[4]

White's habeas petition asserted that his right to due process had been violated by CDC officials' refusal to refer his case for correction after they detected an error in his sentence. He cited to several authorities. He correctly cited Mullaney v. Wilbur, 421 U.S. 684, 691 (1975), for the proposition that the "state supreme court's construction of state's own law is authoritative." Petition, p. 9. He cited to Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) for the

[4]At the initial review stage, this court wrote: "The petition, liberally construed, alleges that prison officials refuse to take the steps necessary to correct an error in the sentence imposed. Liberally construed, the allegation states a claim for a due process violation cognizable in a federal habeas action. A person has a fundamental due process right not to be subjected to a sentence that exceeds that allowed by state law. See generally Gardner v. Florida, 430 U.S. 349, 358 (1977); Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied, 488 U.S. 926, and cert. denied, 488 U.S. 981 (1988)." Order To Show Cause, p. 2. White had not cited to the Gardner or Walker case; rather, the court cited those cases based on its understanding that an error had been made that subjected White to a sentence in excess of that allowed by state law. In retrospect, the court now sees that it misunderstood the nature of White's due process claim.

proposition that, "where the state provides for referral of cases flagged as being discrepant due to errors in sentencing, 'that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.'" Petition, p. 9. The first half of the quote was pure fabrication by White, as Hicks said no such thing. Hicks stands for a more limited proposition that the deprivation of a state law entitlement may implicate the federal Due Process Clause.[5] White also cited Vitek v. Jones, 445 U.S. 480, 488 (1980), without an explanatory parenthetical. Vitek stated that "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Id. at 488. Vitek's holding, irrelevant to White's case, was that the Due Process Clause conferred on a prisoner a right to procedural protections before he was involuntarily transferred to a mental hospital. White also cited to the CDC Operations Manual that allegedly required referral of "discrepant" cases, and to a California Supreme Court case, In re. Sandel, 64 Cal. 2d 412 (Cal. 1966), that he wrote stood for the proposition that "'it is the People who are under a duty to bring the error to the attention of the trial court as soon as possible.'" Petition, p. 9. Sandel is a bit more involved

---

[5]Hicks considered whether a state criminal law also could be considered as a matter of federal due process. In Hicks, Oklahoma law provided that a convicted defendant was entitled to have his punishment fixed by the jury. At the time the defendant was tried, the jury was instructed, in accordance with a habitual offender statute then in effect that the jury had to assess the punishment at 40 years imprisonment if it found defendant guilty. See Hicks, 447 U.S. at 344-45. The jury followed the instruction, imposing the mandatory 40-year term when it returned a guilty verdict. Id. at 345. Later, the habitual offender statute was declared unconstitutional in a separate case, and that led Hicks to try to set aside his sentence. The court of appeal rejected Hicks' effort to have his sentence set aside, reasoning that he was not prejudiced by the impact of the unconstitutional habitual offender statute because his sentence was within the range of punishment that could have been imposed. Id. The Supreme Court determined that this analysis was erroneous. The Court explained that a convicted defendant was entitled under Oklahoma law to have his punishment fixed by the jury and that, without the unconstitutional statute, the jury could have imposed any sentence of not less than ten years, so it was incorrect to say that the instruction that directed a 40-year sentence did not prejudice the defendant. Id. at 345-46. The Court next rejected the argument that this was only a state law error: "It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of a state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, . . . and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." Id. at 347.

than White indicated: Sandel held that correcting an erroneous sentence was a judicial function and had to be done by the court rather than the Adult Authority (i.e., the predecessor to the CDC). See Sandel, 64 Cal. 2d at 415-16.[6] In the part of Sandel relevant to White's case, the court explained that it was not a defendant's burden to initiate judicial action to correct a sentencing error: "On the contrary, in such event it is the People who are under a duty to bring the error to the attention of the trial court as soon as possible, by appropriate motion to vacate the void portion of the judgment and impose a sentence authorized by law." Id. at 418-19. Relying on these authorities, White contended he had a federally-protected due process right to have his case referred to the LPU and the sentencing court because the CDC has determined that there was a discrepancy in his sentence. Contrary to this court's understanding in its order to show cause, White did not actually contend that the sentence imposed exceeded that allowed by state law.

3. The Claim Fails

As noted above, see footnotes 1-2, the California Court of Appeal determined that White was sentenced under California Penal Code § 667.6(c) and not under § 1170.1. That determination is accepted as correct for purposes of considering White's habeas claim in this action.

Here, the alleged mistake by state prison officials does not affect the fact or duration of White's confinement. Accepting the state court of appeal's determination that White's sentences are fully and properly consecutive, no relief is available to White. Both the CDC's Legal Status Summary and the state court's opinion reflect a total term of 43 years. He has no legal right to

---

[6]In Sandel, the trial court erroneously imposed a concurrent sentence for an escape conviction instead of the required consecutive sentence. Sandel, 64 Cal. 2d at 414. The Adult Authority and the People did not take steps to obtain a judicial modification; instead the Adult Authority followed its practice of making the "correction" itself by making a handwritten notation on the abstract of the judgment that the term was to run consecutive rather than concurrent with another sentence. Id. at 414-15. The court held that the Adult Authority had no power to correct an erroneous sentence of a trial court because that was a judicial function. See id. at 415-17.

force the CDC officials to refer his sentence to the state court for sentence correction under California Penal Code § 1170.1 because the state court of appeal has determined that he was not sentenced under § 1170.1. And he has no legal right to force the CDC to ignore the state court of appeal's determination that his sentences were fully consecutive and imposed under § 667.6. The CDC's refusal to refer White's case for a determination of his sentence under a section that the state appellate court already had determined did not apply does not violate any federally-protected right White possessed.

White also may be contending that he had a federally-protected right for referral regardless of whether his sentence would be changed. The Fourteenth Amendment does not require such a hollow act. The provision in the CDC's operations manual that requires referral to LPU of a case in which a sentencing error exists cannot be elevated to a federally-protected right merely by White's say-so. Whether his claim is analyzed under the cases concerning prison conditions or those concerning criminal case procedures, he cannot force the CDC to perform the hollow act of referring his case to the LPU and state court based on the "discrepant" notation when the sentence reflected is correct.

The first step in the due process analysis is determining whether any process was due. Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (examples of such severe conditions include involuntary medication with psychotropic drugs or a transfer to a mental hospital). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See id. at 477-87. An interest of "real

substance" generally will be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence," id. at 484, 487. The refusal to refer White's case did not involve a change in conditions so severe as to implicate the Due Process Clause itself, did not impose an atypical and significant hardship on White, and did not inevitably affect the duration of his sentence.

Under those cases that deal with due process pertaining to criminal case procedures, the claim also would fail. A violation of a state law might implicate federal due process concerns, but only if the state statute creates a protected "liberty interest." See Bonin v. Calderon, 59 F.3d 815, 841 (9th Cir. 1995) ("Bonin I"). A state law creates a "liberty interest" protected by the Due Process Clause if the law: (1) contains "substantive predicates" governing official decision making; (2) contains "explicitly mandatory language" specifying the outcome that must be reached if the substantive predicates are met; and (3) protects "some substantive right protected by the Constitution." Id. at 842; see, e.g., Bonin v. Calderon, 77 F.3d 1155, 1161-62 (9th Cir. 1996) ("Bonin II") (even assuming violation of state law in setting execution date, no federal habeas claim because there is no deprivation of federal substantive right); Bonin I, 59 F.3d at 842 (California statute which gives defendant in capital case right to have two defense attorneys argue in his behalf does not create protected liberty interest cognizable in habeas because it contains neither "substantive predicates" nor "explicitly mandatory language," and there is no federal constitutional right to have two attorneys make closing arguments). Even if he could satisfy the first two requirements, White's claim fails on the third requirement, i.e., he has not shown that the state law (i.e., the rule regarding referral of discrepant cases) protects a substantive right protected by the Constitution. The constitutional red flag usually raised by a sentencing error claim is that a sentence exceeds that allowed by state law, but there is no such concern when the sentence conforms to state law.

In sum, because White's sentence conforms to state law, he has no due process right to have his case referred to the LPU or to the state sentencing court for sentence correction. White

is not entitled to relief on his due process claim.

Lest there be any doubt in his mind, the foregoing analysis also requires the denial of White's motion for summary judgment. (Docket # 14.) There is absolutely no evidence to support his assertion that his term of confinement or his term of confinement plus parole ended on September 20, 2004. In light of the abstract of judgment showing that in 1993 he was sentenced to a total of 43 years and the California Court of Appeal's determination that he was properly sentenced under California Penal Code § 667.6 (rather than under § 1170.1, as he asserts in his motion for summary judgment), his argument that he is being held past a September 20, 2004 release date is patently frivolous.

Finally, the California Supreme Court case relied upon by White, In re. Sandel, 64 Cal. 2d 412, does not preclude a prisoner from asserting a challenge to the sentence. Sandel may require prison authorities and the prosecutor to notify the court when a sentencing error is spotted, but in no way does the imposition of that requirement mean that a prisoner cannot alert a sentencing court to a suspected error. White has tried to assert his sentencing error claim in state court, and has been told that his sentence is not incorrect. (The California Court of Appeal's website shows eighteen cases filed by Darrell White in Fifth District Court of Appeal, at least nine of which were habeas petitions pertaining to his criminal case.)

B. Respondent's Motion To Dismiss

A habeas petition by a state prisoner challenging a decision of an administrative body, such as prison officials' rejection of his request for a reference of his case for sentencing correction, is covered by the one-year habeas statute of limitations, and the limitations period starts to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2003); see also Redd v. McGrath, 343 F.3d 1077, 1081-82 (9th Cir. 2003). In both Shelby and Redd, the limitations period was determined to run from the date on which the prisoner received notice of the denial of his administrative appeal.

The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The limitations period also can be equitably tolled upon a showing of extraordinary circumstances beyond a petitioner's control which prevented him from timely filing the petition. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997) (equitable tolling will not be available in most cases because extensions of time should only be granted if extraordinary circumstances beyond prisoner's control make it impossible for him to file petition on time), cert. denied, 523 U.S. 1061, 1099 (1998), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999).

White's claim is based on the Legal Status Summary form prepared by the CDC. He asserts that he learned that his sentence had a problem when he reviewed the documents in his central file on February 24, 2004 and saw that his Legal Status Summary had "discrepant" printed on it as well as a handwritten notation regarding that discrepancy. Petition, p. 8. He further alleged that a new Legal Status Summary was prepared on April 23, 2004, that "reflected that petitioner's case remained flagged as being a discrepant one, i.e., contained errors in sentencing." Petition, p. 8(a). From the new legal status summary dated April 23, 2004, he "was able to learn that his total term of 43 years was required to be approximately 14 years less." Id. Using April 2004 as the starting date for White's one-year limitations period is erroneous because White knew of and had been pursuing the claim years before then.

White's April 2004 inmate appeal shows that he knew of the problem on his Legal Status Summary no later than 2001, as evidenced by the fact that he alleged that the state court of appeal opinion had wrongly been "used as a basis to deny my req. for an LPU referral in 2001." Motion For Expansion Of Record, Exh. A, § D. He does not explain how he could have been requesting an LPU referral in 2001 if he was unaware of the reported discrepancy on the Legal Status Summary. The 2004 inmate appeal also was rejected as duplicative of his 2001 inmate appeal. See Motion For Expansion of Record, Exhs. C; see generally Motion For Expansion of

Record Exhs. B, D-F. His claim accrued in 2001, as he knew the factual predicate of the claim (i.e., that there was a discrepancy notation on his Legal Status Summary). And he had filed a state habeas petition long before he even saw the April 23, 2004 Legal Status Summary. See Resp. Motion To Dismiss, Exh. 3, p. 1 (Madera County Superior Court Order Denying Petition For Writ of Habeas On The Claimed Record Keeping Error, p. 1 (noting that the case had been filed on March 24, 2004)); see also People v. White, 2003 WL 157525 (Cal. Ct. App. 2003) (denying White's appeal from a petition for writ of error coram nobis and discussing the history of White's efforts to undo the sentence); People v. White, 2005 WL 1460634 (Cal Ct. App. 2005) (rejecting appeal from denial of White's "motion/application for correction of clerical error in the court's abstract of judgment" that had been filed in December 2003 in Madera County Superior Court); see also id. at *1 ("Appellant's motion requested in essence that a consecutive term be reduced from a 'full' term of 11 years to one-third the middle term pursuant to Penal Code section 1170.1").

The limitations period thus began no later than 2001, when White first asked for an LPU referral based on the discrepant error notation on the Legal Status Summary. The Legal Status Summaries prepared in 1997 and in 2003 also each showed a "discrepant" notation. See footnote 3. The only new fact in 2004 was that the California Court of Appeal opinion had been removed from his central file in prison. But the removal of that opinion from his file did not mean that the decision it embodied – that his sentence was not under § 1170.1 – had been vacated. Thus, there was no new relevant fact in 2004.

White is not entitled to equitable tolling for the period of time during which his "citizen's complaint" was pending. His regular inmate appeal was rejected as duplicative on September 13, 2004 – duplicative of an inmate appeal filed in 2001. His decision to continue to pursue the matter via a "citizen's complaint" was not an extraordinary circumstance beyond his control that prevented him from timely filing his federal petition. He also has not shown that his state habeas petitions were filed before the expiration of the one-year limitations period – a limitations period that expired no later than the end of 2002, one year after his LPU referral was denied in 2001.

This federal petition for writ of habeas corpus was stamped "filed" on October 11, 2006, had a signature date of October 5, 2006, and came in an envelope postmarked October 6, 2006. Assuming that the petition was given to prison officials on the date it was signed, it is deemed filed as of October 5, 2006 under the prisoner mailbox rule. See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001) (pro se prisoner's federal habeas petition is deemed filed when prisoner delivers petition to prison authorities for mailing), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002). That was at least three years after the limitations period expired. Respondent's motion to dismiss will be granted because the habeas petition was not filed by the deadline.

C. White's Sanctions Motions

White filed a motion for sanctions against respondent because respondent filed a motion to dismiss instead of an answer to the order to show cause and "for making misrepresentations to and concealing relevant facts from this and other Courts related to Petitioner's case." Motion For Sanctions, p.1. This court does not police the conduct of counsel in other courts and respondent has not engaged in sanctionable conduct in this court. Respondent's motion to dismiss was permissible and therefore will not be stricken or subject him to sanctions. See White v. Lewis, 874 F.2d 599, 600, 602-03 (9th Cir. 1989). The court is receptive to a respondent raising threshold problems (such as lack of jurisdiction, failure to exhaust, improper venue, lack of custody, mootness, and untimeliness) by motion rather than in the answer. When the court sees a procedural problem in its initial review of a habeas petition, it often invites a motion to dismiss rather than an answer. However, as here, there often is not enough information in the petition to alert the court to the existence of a potential procedural problem and the court issues an order to show cause why the writ should not be granted. By doing so, the court does not intend to preclude respondent to move to dismiss the petition for a threshold procedural problem. Respondent did not err, let alone engage in sanctionable conduct, by filing a motion to dismiss rather than an answer. White's first motion for sanctions is DENIED.

(Docket #9.)

White also filed a motion for sanctions against respondent because respondent did not oppose White's motion for summary judgment. Failing to file an opposition brief does not warrant sanctions; the motion would simply be considered unopposed. Furthermore, in light of the patently frivolous nature of White's motion for summary judgment, it was reasonable for respondent to not file an opposition. White's motion for sanctions filed May 9, 2007 is DENIED. (Docket # 17.)

## CONCLUSION

Respondent's motion to dismiss the petition as untimely is GRANTED. (Docket # 7.) The court dismisses the petition because it was not filed before the expiration of the statute of limitations period.

The court dismisses the petition for the additional and separate reason that petitioner is not in custody in violation of the Constitution or laws or treaties of the United States. Now that petitioner has elaborated on the factual details of his claim and presented his evidence, it is plainly evident that there was no due process violation.

Petitioner's motion for summary judgment is DENIED. (Docket # 14.) Petitioner's motions for sanctions are DENIED. (Docket # 9 and # 17.) Petitioner's motion to expand the record is GRANTED in that the court has considered the materials submitted with that motion in deciding the pending motions. (Docket # 12.)

The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 7, 2007

Susan Illston

SUSAN ILLSTON
United States District Judge